# WILLIAM RAYMOND GUARDINO *v.* STATE OF MARYLAND

[No. 663, September Term, 1981.]

*Decided February 5, 1982.*

The cause was argued before MASON and LISS, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Gary S. Offutt, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Robert L. Dean, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

A fifteen year old high school student complained that William Raymond Guardino had raped her, robbed her, and battered her. He was arrested, indicted, and tried in the Circuit Court for Montgomery County. Twelve of his peers were convinced beyond a reasonable doubt that he had committed the crimes and found him guilty of rape in the second degree,[1] robbery, and battery. The trial judge, merging the battery conviction into the rape conviction, sentenced him to the jurisdiction of the Division of Corrections for a total of eight years to commence at the conclusion of a sentence he was then serving.

On direct appeal, Guardino does not suggest that the evidence placed before the jury was not legally sufficient to sustain the convictions. At the trial he admitted that he had vaginal sexual intercourse with the complainant but asserted that it was not by force but with her consent. But

---

1. Rape in the second degree, as here applicable, consists of engaging in vaginal intercourse with another person by force or threat of force against the will and without the consent of the other person. Maryland Code (1957, 1976 Repl. Vol., 1981 Cum. Supp.) Art. 27, § 463 (a) (1).

there was evidence supporting her insistence that the intercourse was by force, against her will, and without her consent. A medical examination made shortly after the incident showed that she had bruises on her neck and left shoulder and on her vulva. The bruises on her neck appeared to be fingerprint-type marks as if someone had grabbed her particularly hard. The bruises on the vulva, the examining doctor opined, could have been caused by forceful intercourse. The bruises were fresh, no more than several hours old. The right upper area of her back, and both sides of her lower back were abraded. The victim's wallet was found on Guardino's person at the time of his arrest, and he admitted taking it after coitus because he needed money.

Guardino attacks the judgments by way of four errors he alleges were made by the trial judge, any one of which, he implores, was so prejudicial as to require reversal of the judgments. He claims that the judge was wrong in refusing to strike two jurors for cause; that on two occasions he improperly admitted evidence adduced by the State; and that he erred with respect to one of his instructions to the jury. We find no merit in regard to the allegations concerning the striking of the jurors and the admission of the evidence. As to the jury charge, the judge erred, but Guardino's challenge comes too late to provide him relief. We first explain why the erroneous jury instruction does not give him succor.

I.

The instruction in question deals with the advisory nature of the judge's charge to the jury. Article 23 of the Declaration of Rights to the Maryland Constitution provides in pertinent part:

> "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."

Md. Rule 757 implements that provision. In the light of Art. 23, it speaks in terms of "advisory instructions" and stipulates that "[t]he court may, and at the request of any party shall, give those advisory instructions to the jury as correctly state the applicable law." Md. Rule 757b. It mandates that "[i]n every case in which instructions are given to the jury the court shall instruct the jury that they are the judges of the law and that the court's instructions are advisory only." *Id.* Art. 23 spells out no exception to the declaration that the jury shall be the judges of the law (although it has an exception as to the facts), and the implementing rule indicates no exception to be brought to the attention of the jury with regard either to the jury being the judges of the law or the court's instructions being advisory only. As recently as 1976, the Court of Appeals spoke in terms of instructions on the law under the Constitutional provision as *"purely* advisory" and stated that "the jury must be so informed." *Dillon v. State,* 277 Md. 571, 580, 357 A.2d 360, 366 (1976) (emphasis supplied), and, in reaffirming that the jury must be left to find their verdict in accordance with their own judgment of the law as well as the facts, observed that such an advisory instruction with respect to the law goes to the jury simply as a means of enlightenment and not, as in civil cases, as a binding rule for their government. *Id., quoting Slansky v. State,* 192 Md. 94, 107, 63 A.2d 599, 604 (1949). So it was that the trial courts of Maryland generally construed the Constitutional provision as being satisfied by informing the jury in the plain language of the rule that they were the judges of the law and that the court's instructions were advisory only. Frequently, however, there was a caution added by the court to the effect that being judges of the law did not confer upon the jury "untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate. . . ." *See Blackwell v. State,* 278 Md. 466, 479, 365 A.2d 545, 553 (1976), *cert. denied,* 431 U.S. 918 (1977).

The judge here charged the jury in the usual fashion:

"As I mentioned before the trial began, under the

Constitution of the State of Maryland in a criminal case, the jury is the judge of the law as well as the facts, and for that reason, then, anything that I may say to you during my instructions is advisory only and you are not bound to follow them. You may feel free to reject my advice as to what the law is and to arrive at your own independent determination of that. At the same time, you are not free to arbitrarily interpret the law as you think it ought to be or so that it will conform to any private opinion that you may have. You have to consciously and in accordance with your oaths listen to the Court and listen to the argument of counsel and based upon that, arrive at a determination of what the law is in the state of Maryland and once having done that and having made your factual determination, which again it is your obligation to make, you will apply facts to the law and you will then, based upon that, will arrive at your verdict.

If you find that there was a conflict, and in many cases there will not be a conflict between what I tell you and what both counsel will tell you about the law, but if there is a conflict, then it will be your duty to resolve that conflict."

The same day the jury in the case before us was charged, the Court of Appeals decided *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980). *Stevenson* declared that

"the jury was not granted, by Article 23, the power to decide all matters that may be correctly included under the generic label — 'law.' Rather, its authority is limited to deciding 'the law of the crime,' . . . or 'the definition of the crime,' as well as 'the legal effect of the evidence before [the jury].' . . . And this Court has consistently interpreted this constitutional provision as restraining the jury's law deciding power to this limited, albeit important, area." *Id.* at 178, 423 A.2d at 564 (citations omitted).

Since the jury's judicial role is limited to the "law of the crime," all other legal issues are for the judge alone to decide. Thus, both the judge and the jury have a law-judging function, and the jury, as well as the court, must know what its respective function is. Therefore, the Court said, the trial judge should inform the jury what it was called upon to do and what it could not do:

"[I]t is incumbent upon a trial judge to carefully delineate for the jury the following dichotomy: (i) that the jury, under Article 23, is the final arbiter of disputes as to the substantive 'law of the crime,' as well as the 'legal effect of the evidence,' and that any comments by the judge concerning these matters are advisory only; and (ii) that, by virtue of this same constitutional provision, all other aspects of law (*e.g.*, the burden of proof, the requirement of unanimity, the validity of a statute) are beyond the jury's pale, and that the judge's comments on these matters are binding upon that body. In other words, the jury should not be informed that all of the court's instructions are merely advisory; rather only that portion of the charge addressed to the former areas of 'law' may be regarded as non-binding by it, and it is only these aspects of the 'law' which counsel may dispute in their respective arguments to the jury. On the other hand, the jury should be informed that the judge's charge with regard to any other legal matter is binding and may not be disregarded by it." *Id.* at 180, 423 A.2d at 565 (footnote omitted).

*Montgomery v. State,* 292 Md. 84, 437 A.2d 654 (1981), further restricted the law-judging function of the jury. It announced that the application of the rule implementing Art. 23 "is limited to those instances when the jury is the final arbiter of the law of the crime." At 89. It explained:

"Such instances arise when an instruction culminates in a dispute as to the proper inter-

pretation of the law of the crime for which there is a *sound basis.* Under such circumstances, counsel are granted leave to argue contrary to the court's instruction on the law of the crime and this is the occasion when Article 23 and Rule 757 b require the court's instruction to be advisory. Even here, counsel may not in their arguments attempt to persuade the jury to enact new law or repeal or ignore existing law. However, in those circumstances where there is no dispute nor a sound basis for a dispute as to the law of the crime, the court's instructions are binding on the jury and counsel as well." At 89 (emphasis in original).[2]

An instruction on "the law of the crime," *Montgomery* notes, "must contain a definition or explanation of the offense charged in language setting forth the essential elements thereof, along with such additional explanation of the law pertaining to the criminal agency of the accused as may be necessary." At 88-89.

Unlike *Stevenson, Montgomery* did not specifically state nor demonstrate that its doctrine was reflected in the prior decisions of the Court. But it is silent as to its retroactive effect.[3] As it serves to explicate *Stevenson,* we assume that its teachings, no less than *Stevenson's,* are an affirmation of prior decisions, in accord with established law consistently

**2.** Maryland Rule 757 d permits the court to give its instructions at any time after the close of the evidence. If the court's charge is delivered after the argument of counsel to the jury, as is usually done in Baltimore City, the court will be aware of any dispute or not as to the law of the crime and be able to inform the jury whether the instruction on the matter is advisory or binding. But if the court's charge is delivered before argument of counsel, as was done in the case at hand and as is frequently done in the counties, whether or not there is a dispute as to the law of the crime may present a problem.

We note that Rule 757 b requires the court "[i]n every case in which instructions are given" to instruct the jury that the instructions are advisory only. Under the dictates of Montgomery v. State, 292 Md. 84, 437 A.2d 654 (1981), this is manifestly not correct.

**3.** No retrospective question was presented by Stevenson v. State, 289 Md. 167, 423 A.2d 558 (1980) because it merely affirmed what it found to be long established law with respect to the law-judging function of the jury.

followed by the Court of Appeals, even though not recognized in practice by many of the trial courts.

It is readily apparent that the charge in the case before us was erroneous in that it was not in conformance with *Stevenson* and *Montgomery.* The charge as made carried with it a blanket statement that the instructions were advisory. There was no indication that the comments of the judge as to the presumption of innocence and the burden of proof, for example, were binding on the jury. From the arguments of counsel, it may be that there was no dispute with respect to some aspects of the law of the crimes charged, but there was a dispute as to other aspects of them. The court, however, made no distinction in connection therewith in regard to the jury's function.

Guardino concedes that with respect to the advisory nature of the instructions, he did not object below to them as required by Md. Rule 757 f, nor did he request a proper instruction. He, thus, falls squarely within Md. Rule 757 h so that his objection on appeal is not reviewable as of right. He requests us, however, despite his failure to object timely, to exercise the discretion conferred on us by section h of the Rule and to take cognizance of the error. We decline to do so. We appreciate that both the bench and the bar are charged with having knowledge of the law. But in light of Rule 757 h, the failure of the trial judge to recognize that the Court of Appeals had "consistently interpreted" Art. 23 as "restraining the jury's law deciding power," limiting it to the law of the crime, cannot excuse the failure of defense counsel to recognize that restraint and interpose a timely objection when the trial judge failed to abide by it. This is in accord with *Scarborough v. State,* 50 Md. App. 276, 437 A.2d 672 (1981).

We find support for our position in *Stevenson.* The majority declined to review the propriety of the individual instructions given there because no question had been raised thereon except the failure to inform the jury that all instructions on the law were binding on it. 289 Md. at 171, 423 A.2d

at 561. The dissenting members of the Court hotly disputed this, stating that "[a] review of the record demonstrates that there was an objection to the advisory instruction given, and that the issue has continuously been preserved for appellate review." 289 Md. at 196, 423 A.2d at 573-74 (Eldridge, J., dissenting). In a footnote, the majority observed that even if the dissent were correct in its view that the basis of objection was the specific instructions, that basis was neither properly presented to nor ruled upon by the trial court as required by Md. Rule 757 f. Therefore, the Court concluded, citing Md. Rule 885, the question was not before it on appeal. In the case at hand, as we have indicated, no question was presented to or ruled upon by the lower court as to the advisory instruction, and, thus, it is not before us on appeal. Md. Rule 1085. The error in the instructions in *Stevenson* was as plain as the error in the instruction here, and, although the Court of Appeals could have taken cognizance of it on its own motion, it chose not to do so.[4]

## II.

As we have indicated, we find to be without merit the allegation that the trial judge refused to strike two prospective jurors for cause. A person summoned for jury service may be excused from a particular jury by the court upon a challenge by a party for good cause shown. Maryland Code (1974, 1980 Repl. Vol.), § 8-210 (b) (5) of the Courts and Judicial Proceedings Article; Md. Rule 754b. In this jurisdiction, it is established that "[i]n determining whether a juror should be excused for cause, the general question is whether a person holds a particular belief or prejudice that would affect his ability or disposition to consider the evidence fairly and impartially and reach a just conclusion."

---

4. In Montgomery v. State, 292 Md. 84, 437 A.2d 654 (1981), the Court determined the issue with regard to the advisory nature of the instructions without mention as to whether timely objection was made below. A review of the record extract filed with the Court, however, shows that proper exception was made to the instruction at the conclusion of the charge.

*King v. State,* 287 Md. 530, 535, 414 A.2d 909, 912 (1980). This is in accord with the statutory provision that a person may be excused from a particular jury by the court after a determination that the person may be unable to render impartial jury service. Maryland Code (1974, 1980 Repl. Vol.) § 8-210 (b) (2) of the Courts and Judicial Proceedings Article.[5]

During the examination of prospective jurors on the voir dire, the trial judge asked them "[i]f you have ever been a witness to a crime or have ever been the victim of a crime or have ever been accused as having been a person who committed a crime; any of the three, a witness to the crime, a victim, or an accused. ... I am excluding minor traffic violations." Dorothy Farquhar informed the court that her house had been broken into Monday past and jewelry stolen. The articles had not been recovered and no one had been arrested. The court inquired: "Do you feel that that would affect your ability to be fair and impartial if you were put on a jury?" The juror replied: "I don't think so, no." Defense counsel's request that she be excused for cause was denied. Subsequently, she was excused upon Guardino's peremptory challenge. Maryland Code (1974, 1980 Repl. Vol.) § 8-210(b) (4); Md. Rule 753. Before denying the motion to strike this juror for cause, the court determined that her recent experience did not render her unable to decide the case impartially. Under the test applicable to striking for cause, she was qualified to serve, and, in any event, she was not a member of the jury which tried Guardino. There was no error in the denial of the request to strike Dorothy Farquhar for cause. *McCree v. State,* 33 Md. App. 82, 98, 363 A.2d 647, 657 (1976).

---

**5.** It was the view of the Court in King v. State, 287 Md. 530, 414 A.2d 909 (1980) that "the mere statement by a juror of his belief that the criminal law concerning marijuana ought to be modified, without more, does not indicate that the juror is biased, prejudiced or unqualified to be a juror in a prosecution for possession and distribution of marijuana." At 535-36, 414 A.2d at 912. The Court observed: "Many people may personally believe that a particular law is undesirable or should be changed, yet the existence of such a belief does not necessarily mean that the holder would refuse or be unable to apply the existing law to the facts of the case." At 536, 414 A.2d at 912.

Charles Richardson's response to the inquiry of the court was that his wife "had her purse stolen twice [she just sat her bag down while she was making a purchase and somebody took it,] and unauthorized use of credit cards and the night before last someone stole some of our Christmas shopping." No one had been arrested. Richardson said that he did not think that these experiences would affect his ability to be fair and impartial if he were put on the jury. Guardino's request that Richardson be stricken for cause was denied. Richardson was placed on the jury, and although the defense ultimately used all of its peremptory strikes, there were peremptory strikes available at the time Richardson was accepted. There was no showing that Richardson was biased, prejudiced, or otherwise unqualified, and we see no error in the denial of the request to excuse him as a juror for cause. *Tisdale v. State,* 30 Md. App. 334, 338, 353 A.2d 653, 656 (1976).

## III.

### (1)

As to the allegations regarding the admission of testimony, Guardino claims error by the court in permitting to go before the jury "testimony respecting what the prosecutrix said to others after the alleged rape and robbery."

The challenged testimony was elicited by the State from the prosecutrix's mother, brother, and a police officer, Denise Gill. The complainant made declarations to those persons to the effect that she had been raped by Guardino and threatened by him with harm if she informed the police. The statements were made shortly after the commission of the crimes; the rape occurred between 10 and 11 p.m.; the prosecutrix talked to her mother and brother shortly after 11 p.m. and to Officer Gill about 11:40 p.m. At the time she made the statements, she was "very, very upset." She was crying. She was described as "very, very distraught."

We think that it is clear that the evidence of the circum-

stances under which the declarations were made was sufficient to support a determination by the court that they were recent and occurred while the victim "was still emotionally engulfed by the situation." *Price v. State,* 5 Md. App. 127, 132, 245 A.2d 600, 603 (1968). Thus, they were within the *res gestae* exception to the hearsay evidence rule. *Smith v. State,* 6 Md. App. 581, 587, 252 A.2d 277, 280, *cert. denied,* 256 Md. 748 (1969). Furthermore, it is established in Maryland that a complaint by a rape victim may be admitted as original evidence primarily to support the testimony of the victim as to the time, place, crime, and name of the wrongdoer. Also, in a proper case, the victim's complaint can be a part of the *res gestae. Shoemaker v. State,* 228 Md. 462, 180 A.2d 682 (1962); *Green v. State,* 161 Md. 75, 155 A. 164 (1931); *Estep v. State,* 14 Md. App. 53, 286 A.2d 187 (1972); *Smith v. State, supra.* No matter what reason the trial judge may have had in denying the objection to the evidence in question, *see Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021 (1980), we cannot say that the judge abused his discretion in admitting the challenged declarations. *Smith v. State, supra* at 587, 252 A.2d at 281.

(2)

Guardino claims error in the admission of evidence respecting a dispute at the time of his arrest at a shopping center parking lot between the police and three of his friends. He asserts that the admission of the evidence prejudiced him in two respects: "it indicates to the jury that [he] associates with 'bad' people and should not be believed, and also indicates to the jury that his witnesses should be discredited because of their dispute with the police." The claim stems from the cross-examination of the three friends, Edwardo Johnson, Lolita Barnes, and Juan Ramirez, while testifying for the defense. The inquiry by the prosecution centered on the actions of Ramirez while Guardino was being arrested. Johnson denied unequivocally that Ramirez got in a fight with the police but said that "[w]e were trying

to find out why they arrested Mr. Guardino. . . . We were asking them and they wouldn't tell us, and then all we asked them very nicely why he was being arrested, and then the police got very agitated and one police officer opened the car door and let his dog out to try and get us out of the shopping center." Barnes testified without objection as to her recollection of the circumstances of Guardino's arrest: "[A]ll of a sudden these police cars came all around, and I was, like, wild and the next thing I knew Juan was fussing — everybody was fussing. They were handcuffing . . . [Guardino]. This man was going to get a dog out on me, and I didn't hurt anybody." She replied to the prosecutor's question, "Did Juan get into an altercation with the police officer?" by stating that "they had words," and denied that the words were with a black police officer — "not the way you are asking, no." It was only when the question, "Did he have words with a black police officer?" was repeated that objection was made and overruled. She explained, "Yes, he was asking the black policeman what was the arrest for. I mean, what was the charge, and the officer wouldn't say anything. Now, the person he had words with was white." She was asked, again without objection, "Did he want to get into a fight with the black police officer?" and replied, "No, he just wanted him to answer the question." The State pursued the matter with Ramirez by asking, "Did you get into a verbal fight with the police officers?" He answered, over objection, "There were some words exchanged," while Guardino was being arrested. He denied that one Tony "had to take [him] into his car and drive away from there because things were getting a little hot," although he admitted that Tony encouraged him to get into the car.

There was no reversible error in admitting the evidence to which objection was made. Witnesses may be cross-examined on matters which are apt to affect credibility, test memory, show a relation to a party or cause or to show bias or the like. *Kantor v. Ash,* 215 Md. 285, 290, 137 A.2d 661, 664 (1958); *Jenkins v. State,* 14 Md. App. 1, 5, 285 A.2d 667, 670 (1971), *cert. denied,* 265 Md. 739 (1972).

"It is firmly established that the allowance or disallowance of certain questions on cross-examination is normally left to the sound discretion of the trial judge." *Jenkins* at 5-6, 285 A.2d at 670. We see no abuse of discretion here. We cannot say that the trial judge was wrong in determining that the questions were proper as likely to affect the credibility of the witnesses. And we note that the testimony tended to show the witnesses' bias and reveal their relation to the accused and the cause.

> *Judgments affirmed.*
> *Costs to be paid by appellant.*