574 A.2d 326

**Paul Martin COLE**

v.

**STATE of Maryland.**

**No. 1493 Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 4, 1990.

Ned Greenberg, Assigned Public Defender (Robert D. Dinerstein and Richard J. Wilson, Assigned Public Defenders of Washington, D.C., on the brief), for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both of Baltimore, and Thomas E. Hickman, State's Atty. for Carroll County, of Westminster, on the brief), for appellee.

Argued before GILBERT, C.J., and MOYLAN and ROBERT M. BELL, JJ.

MOYLAN, Judge.

The appellant, Paul Martin Cole, was convicted by a Carroll County jury of a sexual offense in the second degree. Upon this appeal, he raises the following three contentions:

1. That the evidence was not legally sufficient to sustain the conviction;

2. That the trial judge erroneously admitted as rebuttal evidence prior consistent statements made by the ten-year-old victim; and

3. That the trial judge erroneously denied the appellant's motion for a new trial after the discovery of allegedly exculpatory evidence.

On Saturday, October 29, 1988, the appellant was living with Barbara Stoffa,[1] the mother of ten-year-old Amy Stoffa. Amy testified that shortly after her mother left for work that day, she went into the bedroom to take the appellant a cup of coffee. The appellant told her to undress, got Vaseline from under the bed, put it on his penis and her anus, and engaged in anal intercourse.

There was corroborative testimony as well. Barbara Stoffa testified that on Tuesday, November 1, three days after the attack, her daughter complained to her of having been sexually assaulted. On the following morning, Barbara Stoffa took her daughter to a pediatrician, Dr. Anthony Vazzano. Dr. Vazzano testified that Amy related the incident to him in a way consistent with her testimony at trial. He further testified to discovering an anal cut consistent with the sexual abuse charged. After Dr. Vazzano reported the incident to the Department of Social Services, Mr. Charles Bosley, a Child Protective Services Worker at the Department of Social Services, conducted an investigation. On Thursday morning, November 3, he and Maryland State Trooper Carol Dorn interviewed Amy in the presence of her mother. Trooper Dorn testified that Amy described the offense that had occurred on the previous Saturday. Mr. Bosley also testified to the fact of Amy's complaint.

---

1. On January 8, 1989, approximately two months after the crime, the appellant and Barbara Stoffa were married. They have subsequently separated.

In terms of legal sufficiency, there was abundant evidence of the appellant's guilt to justify the trial judge's submitting the case to the jury.

A legally sufficient, *prima facie* case, however, is not necessarily the same as an ultimately persuasive case. Except for the observation of the anal tear by the pediatrician, all of the evidence of the appellant's guilt emanated from Amy herself, either through her trial testimony or through her versions of the incident given to 1) her mother; 2) Dr. Vazzano, the pediatrician; 3) Mr. Bosley, the social worker; 4) Trooper Dorn; and 5) Peggy Rock, her baby-sitter. The appellant took the stand in his own defense and denied totally any sexual involvement with Amy.

With the key issue before the jury clearly being a credibility battle between Amy and the appellant, the appellant sought to erode Amy's credibility by calling the social worker, Charles Bosley, as a defense witness. Mr. Bosley testified that Amy is mildly retarded and has a tendency to exaggerate in order to get attention. He testified further that he had been called upon on two other occasions to interview Amy about allegations that two other persons had sexually abused her. In the course of one of those other interviews, Mr. Bosley noted that Amy was not always to be believed and that one of the other alleged incidents was probably a dream.

The critical issue on this appeal revolves about the State's effort to rehabilitate the arguably impeached credibility of Amy. Four witnesses were called in rebuttal: 1) Barbara Stoffa, 2) Trooper Dorn, 3) Mr. Bosley, and 4) Peggy Rock, the baby-sitter. The appellant alleges that all four of these rebuttal witnesses were permitted to testify to prior consistent statements given them by Amy.

Although it is not fatal to the appellant's cause, he does exaggerate the number of incidents of alleged misuse of prior consistent statements. Barbara Stoffa's rebuttal testimony did not relate to the prior complaints made to her by Amy. She simply rebutted the appellant's assertion that

the Vaseline jar used during the sexual abuse episode had been used by the appellant and Barbara Stoffa and placed under the bed for that purpose. The rebuttal testimony of Charles Bosley, moreover, consisted simply of Mr. Bosley's observation that, notwithstanding Amy's occasional tendency to "exaggerate," there had been factual support for one of her other complaints of sexual abuse.

As we approach consideration of the critical issue, therefore, the instances of allegedly erroneous use of rehabilitative testimony are reduced from four to two. That, however, does not compromise the forcefulness of the appellant's argument. The appellant urges that the prejudice is self-evident when one party's version of an incident is allowed to be repeated again and again. He argues that the repetitive retelling of the same story adds to its weight in the minds of its auditors. We agree that that is the probable impact.

Before being called upon to resolve the credibility battle between two diametrically opposed versions of the critical event in this case, the jury heard the appellant's version, denying complicity, one time. The jury heard Amy's version, charging complicity, seven times; 1) through Amy's testimony on the witness stand, 2) through Amy's complaint to her mother, recounted in the State's case-in-chief, 3) through Amy's complaint to Dr. Vazzano, recounted in the State's case-in-chief, 4) through Amy's complaint to Mr. Bosley, recounted in the State's case-in-chief, 5) through Amy's complaint to Trooper Dorn, recounted in the State's case-in-chief, 6) through Amy's complaint to Trooper Dorn, recounted for a second time in rebuttal, and 7) through Amy's complaint to Peggy Rock, recounted in rebuttal.

There could, of course, be no legitimate complaint as to Amy's version told upon the witness stand. The appellant has not, moreover, mounted a challenge to the four repetitions of Amy's earlier complaints delivered in the course of the State's case-in-chief. The appellant's argument is that the sixth and seventh repetitions, under the false guise of rehabilitative testimony, were the straws that broke the

camel's back. They were doubly prejudicial, he argues, not only because of their drum-like repetitive cadence, but because they also allowed the State the undeserved debater's "edge" of getting in the last word. We agree. If we find error, it will not be harmless. *Newman v. State*, 65 Md. App. 85, 98, 499 A.2d 492 (1985).

In both brief and oral argument, the State defends the admissibility of the challenged testimony on two separate grounds. It argues that evidence of Amy's prior consistent statements rehabilitated her impeached credibility and was, therefore, proper rebuttal. We will turn to this argument after considering the State's alternative rationale. Alternatively, the State argues that "in the special situation of sex offenses, the trial judge in his discretion may admit evidence of a timely complaint of the offense even where the two prerequisites [for rebuttal use] have not been satisfied." We turn first to this argument.

### The Timely Complaint of Rape or Other Sexual Offense [2]

It is true that a victim's timely complaint of a sexual attack is admissible as part of the State's case-in-chief. As was pointed out in *State v. Werner*, 302 Md. 550, 563, 489 A.2d 1119 (1985):

"In prosecutions for sex offenses, evidence of the victim's complaint, coupled with the circumstances of the complaint, is admissible as part of the prosecution's case if the complaint was made in a recent period of time after the offense."

*See also Leek v. State*, 229 Md. 526, 527, 184 A.2d 808 (1962); *Shoemaker v. State*, 228 Md. 462, 466, 180 A.2d 682 (1962); *Murphy v. State*, 184 Md. 70, 76, 40 A.2d 239 (1944).

---

2. 4 *Wigmore on Evidence* (Chadbourn rev. 1972), § 1135, "Complaint of rape (continued): (A) First theory: Explanation of an inconsistency; fact of complaint is admissible," at 303, points out:

"The foregoing principles apply equally to *other charges* of sex crimes, though here there is found naturally some difference of opinion in applying the principle to specific offenses."

6 L. McLain *Maryland Evidence* (1987), § 613.2, at 170–171, observes:

"In a few special situations, prior consistent statements are admissible even when the witness has not been impeached. Prior identifications of the criminal defendant by the witness may be so proved, *as may timely complaints of rape.*" (Footnotes omitted) (Emphasis supplied).

In this same regard, *McCormick on Evidence* § 297 (E. Cleary 3d ed. 1984) points out, at 859:

"In rape cases traditionally, and increasingly in cases of sex offenses generally, evidence has been held admissible that the victim made complaint. The only time requirement is, that the complaint have been made without a delay which is unexplained or is inconsistent with the occurrence of the offense, in general a less demanding time aspect than with the typical excited utterance situation." (Footnotes omitted).

 That a victim's timely complaint about a sexual attack is admissible is sure. Why it is admissible is far from sure.[3] The phenomenon of the timely complaint is a kind of evidentiary amphibian, possessing both lungs and gills. It is neither purely aquatic rebuttal evidence nor yet

---

**3.** 4 *Wigmore on Evidence* (Chadbourn rev. 1972), § 1134, "Complaint of rape; history," at 297–298, points to the almost certain source of doctrinal confusion:

"This class of corroborative statements is unusually complicated in principles and confused in precedents—not because the principles themselves are inherently complex, but because the evidence admits of the application of three distinct general principles for its admission, and because the distinct bearings of these different principles have not always been borne in mind by the courts.

. . . . .

There are three possible principles, well enough established otherwise, upon which such evidence can be offered:

1, as an explanation of a self-contradiction . . .;
2, as a corroboration by other similar statements . . .;
3, as a *res gestae* declaration, excepted under the hearsay rule. . . ."

solidly land-based substantive evidence, but it has strong attributes of both.

It is not merely rebuttal evidence, because 1) it may be offered in the State's case-in-chief, 2) it is not hedged in by limiting instructions, and 3) its admissibility is not contingent upon the defendant's doing something first. On the other hand, it is not fully autonomous substantive evidence, because it is subject to limitations such as 1) the requirement that the victim actually testify; 2) the timeliness of the complaint; and 3) the extent to which the references may be restricted to the fact that the complaint was made, the circumstances under which it was made, and the identification of the culprit, rather than recounting the substance of the complaint in full detail. These are limitations of a type that ordinarily are associated with rebuttal evidence. Yet, it is substantive to the extent that it corroborates the existence of the *corpus delicti,* notwithstanding the fact that it cannot, standing alone, establish the *corpus delicti.*[4] It appears that the timely complaint has evolved as a hybrid form of anticipatory rehabilitation, as something that does not wait to respond to impeachment but instead forestalls it.

The unusual anticipatory or forestalling character of such evidence was discussed by 4 *Wigmore on Evidence* (Chadbourn rev. 1972), § 1135, "Complaint of rape (continued): (A) First theory: Explanation of an inconsistency; fact of complaint is admissible," at 298–300:

"So, where nothing appears on the trial as to the making of such a complaint, the jury might naturally assume that none was made, and counsel for the accused might be entitled to argue upon that assumption. As a peculiarity, therefore, of this kind of evidence, it is only

---

**4.** Perhaps it is more accurate to say that we can never know whether such corroborative evidence could ever, standing alone, establish the *corpus delicti,* because the necessary precondition for its admissibility precludes the very possibility that the issue could ever arise. By definition, there cannot be corroborative evidence in the absence of something to be corroborated.

just that the prosecution should be allowed to forestall this natural assumption by showing that the woman was *not silent, i.e.,* that *a complaint was in fact made.*

This apparently irregular process of negativing evidence not yet formally introduced by the opponent is regular enough in reality, because the impression upon the tribunal would otherwise be there as if the opponent had really offered evidence of the woman's silence. Thus the essence of the process consists in the showing that the woman did *not* in fact behave with a silence inconsistent with her present story. The courts have fully sanctioned this analysis of the situation." (Footnote omitted) (Emphasis in original).

What the fact of a timely complaint forestalls or counteracts is frequently a defense based upon consent. Although some of the analysis and much of the language of the early case law seems decidedly "dated" when judged by the modern attitude toward sexual crime, it nonetheless helps to explain how this evidentiary species evolved. The 1931 decision of the Court of Appeals in *Green v. State,* 161 Md. 75, 155 A. 164 (1931), discusses what it perceived to be the significance of the absence of a complaint and, therefore, the pertinence of the complaint, if made. It observed, at 161 Md. 80, 155 A. 164:

"The crime of rape is accomplished by force, and is so frightful and shocking to the physical and nervous system of the victim that it is generally manifested by disordered and torn clothing, bruises and wounds, outcry, and as prompt a disclosure to family, relatives, or intimate friends as the circumstances admit. Should any of these corroborative *indicia* of the crime be not established, it would commonly be a just basis for the contention that the woman consented. So, if it should appear in any case that the prosecutrix had not made complaint, the failure would weigh heavily against the State and in favor of the accused, unless satisfactorily explained. There seems no question that the defense may prove an absence of complaint at the time of the crime and, so, it is

but just to allow the prosecutrix to be corroborated by the proof of her complaint recently made."

In a sexual attack case where the defense is consent, the issue will almost always reduce itself to one of the credibility of the victim versus the credibility of the attacker. In this regard, the Court of Appeals pointed out, at 161 Md. 80–81, 155 A. 164:

"As secrecy and isolation are usually the conditions under which the crime is committed, and the testimony of the man and the woman are in conflict on the vital issue of whether or not force has been employed, some corroboration of the woman is important in the proof of the crime.... So, of necessity the complaint of the victim, if recently made after the alleged outrage, is admissible."

As recently as 1985, *State v. Werner, supra,* relied upon *Green* and referred to these reasons behind the evidentiary rule, stating at 302 Md. 565, 489 A.2d 1119:

"As indicated in *Green v. State, supra,* 161 Md. at 80 [155 A. 164] the failure of a sex offense victim to complain at the time of the crime or shortly thereafter is a matter 'that the defense may prove' and 'would weigh heavily against the state.' It is an impeaching circumstance which, if elicited by the defense, can then be explained by the State."

4 *Wigmore, supra,* § 1135, at 298, not only concurs as to the provenance of the rule but points out that the relevance of either a timely complaint and the absence of a complaint is not limited to the situation where the defense is one of consent:

"Now, when a woman charges a man with a rape, and testifies to the details, and the accused denies the act itself, its very commission thus coming into issue, the circumstance that at the time of the alleged rape the woman said nothing about it to anybody constitutes in effect a self-contradiction of the above sort. It was entirely natural, after becoming the victim of an assault against her will that she should have spoken out. That

she did not, that she went about as if nothing had happened, was in effect an assertion that nothing violent had been done.

Thus, the *failure of the woman,* at the time of an alleged *rape,* to *make any complaint* could be offered in evidence (as all concede) as a virtual self-contradiction discrediting her present testimony." (Footnote omitted) (Emphasis in original).

*McCormick on Evidence, supra,* § 297, at 859, refers as well to this historic evolution:

"In its origin, the theory of admissibility was to repel any inference that because the victim did not complain no outrage had in fact transpired."

When a timely complaint of a sexual attack is introduced by the State as part of its case-in-chief, the theory for its admissibility is this anticipatory forestalling of any self-contradiction implicitly arising out of the victim's failure to complain. Under this theory, there are both preconditions for the admissibility of the complaint and limitations upon what may be said about the complaint.

■ The obvious and logical precondition is that the victim of the sex crime must, indeed, be a witness. It was of this that 4 *Wigmore on Evidence* (Chadbourn rev. 1972), § 1136, "Complaint of rape: (A) First theory: Explanation of an inconsistency (continued): Consequences of this theory; details not admitted; complainant must be a witness," at 307–310, spoke:

"Since the *only* object of the evidence is to repel the supposed inconsistency between the woman's present testimony and her former silence, it is obvious that if she has not testified at all, there is no inconsistency to repel, and therefore the evidence is irrelevant." (Footnote omitted).

*McCormick on Evidence, supra,* § 297, at 859, is in accord:

"Accordingly, if the victim did not testify, evidence of complaint was not admissible."

This precondition upon the reception of evidence of complaint is a settled part of Maryland law. It was of this that *Green v. State, supra,* spoke, at 161 Md. 82, 155 A. 164:

"There is great conflict and confusion of cases and authority, but the better rule, and the one more in conformity with our practice and decisions, is that, *if the prosecutrix has testified to a violent assault, the fact of the making of complaint* within a reasonable time under the circumstances is original evidence, and *may be shown* to prevent the inference that the woman did in fact maintain a silence inconsistent with her narrative at trial." (Emphasis supplied).

*And see* 6 L. McLain *Maryland Evidence* (1987), § 801(2).1, at 297:

"In rape cases, however, proof that the victim made a prompt report of rape is admissible during the state's case in chief, as well as during rebuttal, to corroborate the victim's testimony, as long as the victim is present in court and available for cross-examination." (Footnote omitted).

Also under this theory and when the complaint is offered initially as a part of the State's case-in-chief, there are limitations upon the fullness with which the complaint may be narrated. Both the timeliness of the complaint and the circumstances under which it is made are, of course, circumstantial guarantees of its logical relevance (and also of its trustworthiness; the two criteria here go hand in hand). Although the earlier case law admitted only the bare fact that the complaint had been made, the restraints have been loosened at least to the point of admitting as well the essential nature of the crime complained of and the identity of the assailant. 4 *Wigmore, supra,* § 1136, at 307, discusses this limitation:

"The purpose is to negative the supposed inconsistency of silence by showing that there was not silence. Thus the gist of the evidential circumstances is merely nonsilence, *i.e.,* the *fact* of a complaint, but the fact only. That she complained of a rape, or an attempt at rape, is all that

principle permits; the further terms of her utterance (except so far as to identify the time and place with that of the one charged) are not only immaterial for the purpose, but practically turn the statement into a hearsay assertion, and as such it is inadmissible (except on the third theory)." (Footnote omitted) (Emphasis in original).

In terms of the admissible contents of the complaint, *Guardino v. State,* 50 Md.App. 695, 706, 440 A.2d 1101 (1982), has catalogued them:

"[I]t is established in Maryland that a complaint by a rape victim may be admitted as original evidence primarily to support the testimony of the victim as to the time, place, crime, and name of the wrongdoer."

*And see Blake v. State,* 157 Md. 75, 78–80, 145 A. 185 (1929); *Murphy v. State,* 184 Md. 70, 76, 40 A.2d 239 (1944); *Cantrell v. State,* 50 Md.App. 331, 336–338, 437 A.2d 696 (1981).

When a timely complaint of a sexual attack is offered, therefore, in the State's case-in-chief and for this anticipatory, forestalling purpose, it is clear that the more narrative details of the complaint are not admissible. When more than the skeletal details are admissible, it is under *Wigmore's* second principle for receiving such evidence and then only by way of genuine rehabilitation and rebuttal. When the victim's credibility has been impeached, either on cross-examination or through defense witnesses, then the prior complaint, if otherwise qualified, may come in in full detail as a prior consistent statement. It is only in this second capacity that full detail is admissible. In this regard, *Green v. State, supra,* pointed out at 161 Md. 82, 155 A. 164:

"*[I]f her testimony* of the commission of the alleged crime *be impeached* by witnesses or by a cross-examination based on the defence that she consented or that her evidence is false, *the terms and details of the complaint are admissible,* preferably in rebuttal...." (Emphasis supplied).

*Rice v. State,* 9 Md.App. 552, 568–569, 267 A.2d 261 (1970), also discussed this necessary precondition for the admissibility of the full details of the complaint:

"It has been held that evidence of a victim's immediate complaint to another person about an alleged rape is admissible.... It has also been held *the details of the complaint are admissible if the victim has been impeached by other witnesses, or cross-examined as to consent or on the basis that her evidence is false.* Since in this case the prosecutrix was cross-examined as to her consent, as well as impeached by other witnesses, the details of the report were admissible." (Citations omitted). (Emphasis supplied).

◼ This second principle of admissibility of a complaint of sexual attack, one grounded in true rehabilitation and rebuttal theory, will be discussed hereinafter as we consider the State's primary argument as to admissibility. For purposes of disposing of the State's alternative ground, however, it is clear that the rebuttal testimony of Trooper Dorn and of the baby-sitter did not qualify. If the State is to justify admissibility, it must be under traditional rehabilitation analysis and not under a "timely complaint of sexual offense" short-cut or alternative.

In the first place, the two testimonial narrations in issue were not offered in the State's case-in-chief but came only in rebuttal. In the second place, there is not in the case of the child victim the same implicit self-contradiction that may arise from the lack of timely complaint by an adult victim. In the third place, in a case such as this where there is no defense of consent available, there is not the same necessity to forestall the possibility that such a defense will be raised. In the fourth place, the State had already exhaustively established the fact of a timely complaint by showing three such complaints made to four different testifying witness-

es.[5] In the fifth place, the use of Trooper Dorn for such a purpose in rebuttal did no more than repeat the similar testimony of the same Trooper Dorn already offered at an earlier stage of the case.

### The Use of the Complaint in Rebuttal As A Prior Consistent Statement

Just as a victim's complaint about a sexual attack may be offered as a part of the State's case-in-chief, it may also be offered in rebuttal. In this second capacity, however, under what *Wigmore* referred to as the second principle of law undergirding the admissibility of such complaints, the substantive and procedural incidents of the evidentiary use are not necessarily the same as when the complaint is offered as part of the State's case-in-chief. As 4 *Wigmore on Evidence* (Chadbourn rev. 1972), § 1137, "Complaint of rape (continued): (B) Second theory: Rehabilitation by consistent statement," observed, at 311, "[I]n certain respects the conditions of use under the present theory differ radically from those under the preceding one."

At the most fundamental level, the fact that the complaint about a sexual attack is a complaint about a sexual attack is only coincidental. The use of such a complaint for rehabilitative purposes in rebuttal derives its significance from its more general character as a prior consistent statement. The complaint about a sexual attack

---

5. Apparently, no question was raised as to whether the four testimonial versions of Amy's complaint given in chief went in their detail beyond the relatively austere scope permitted under this evidentiary theory. Nor apparently was any question raised as to whether complaints made three, four, and five days after the event, respectively, qualified as being sufficiently timely. In this regard, however, *see Legore v. State,* 87 Md. 735, 737, 41 A. 60 (1898) (where a complaint made on the evening following a morning assault was held to be timely), and *Parker v. State,* 67 Md. 329, 330–331, 10 A. 219 (1887) (where a complaint made one week after a sexual attack was held to be non-timely). Both cases and the general proposition that timeliness must be assessed under the totality of circumstances and on a case-by-case basis were discussed in *State v. Werner,* 302 Md. 550, 564–565, 489 A.2d 1119 (1985).

is nothing more than a particular instance of the more general phenomenon. Under the circumstances, the rules and principles generally governing the rehabilitative use of a prior consistent statement are specifically controlling.

 The common denominator between the anticipatory use of the complaint and the rehabilitative use of the complaint is the requirement that the victim actually be a witness. As 4 *Wigmore, supra,* § 1138, observed, at 311:

"But it is obviously necessary, here as in the preceding theory, that *the woman* [the victim] *must have testified.* This requirement is common to both theories; for both assume that the purpose is to rehabilitate a witness, and if the woman has not testified, there is no one in that position." (Footnote omitted) (Emphasis in original).

It is simply the truism that one cannot rehabilitate or corroborate the credibility of a non-witness.[6] This requirement is not a problem in the present case.

A major difference between the two uses of the complaint is that the substantive detail that was forbidden under the anticipatory use is legitimate, and indeed necessary, for the rehabilitative or rebuttal use. In the former employment, what was significant was *the very fact of the complaint,* the forestalling of any inference that the victim had been silent and thereby self-contradictory. In the latter employment, by way of contrast, it is the fullness and precision of the substance of the complaint that matters. Its purpose is

---

6. Although, as a practical matter, almost always true, this literal requirement that only a live witness can thus be rehabilitated may not be an absolute. Posit the situation where an out-of-court declaration by the victim of the sexual attack has qualified as a legitimate exception to the hearsay rule. Posit the defendant impeaching the credibility of the out-of-court declarant by showing a motive to fabricate before the out-of-court declaration was made. Posit further a prior statement made before the motive to fabricate had arisen, which is consistent with the impeached out-of-court declaration. There is no theoretical reason why the rehabilitative process would not be as efficacious here as in the case of the live witness. This exotic variation, however, does no violence to the general rule because under the circumstances, the out-of-court declarant is the functional equivalent of a live witness.

to show, detail by detail, that the earlier version is fully and particularly consistent with the trial version of the event. The more detail, the better. 4 *Wigmore, supra,* § 1138, observed in this regard, at 311:

"Since the purpose is to show that she tells the same story as on the stand, the whole of the complaint as made by her, with its terms and details, is to be received, and not the mere fact of the complaint." (Footnote omitted).

As we have already discussed, in quoting from *Green v. State,* 161 Md. 75, 82, 155 A. 164 (1931), and *Rice v. State,* 9 Md.App. 552, 568–569, 267 A.2d 261 (1970), this is the settled Maryland law upon the subject. Again, this aspect of the rehabilitative use of the complaint poses no problem in the present case.

Another major difference between the two uses of the complaint is that the State may use the complaint to negate the inference of self-contradictory silence in advance of or, indeed, in the total absence of any impeachment of the victim. For the rehabilitative or rebuttal use of the complaint, on the other hand, it is never permitted until there has actually been some impeachment of the victim's testimonial credibility. *Collins v. State,* 318 Md. 269, 285, 568 A.2d 1 (1990); *Cordovi v. State,* 63 Md.App. 455, 468, 492 A.2d 1328 (1985); *Thomas v. Owens,* 28 Md.App. 442, 449, 346 A.2d 662 (1975).

The modality of impeachment is not critical. *Harris v. State,* 11 Md.App. 658, 661–662, 276 A.2d 406 (1971). It may be by the showing of a prior inconsistent statement. It may just as easily be by the showing of bias, interest, corrupt influence, or contrivance to falsify. *Craig v. State,* 76 Md.App. 250, 290–294, 544 A.2d 784 (1988), *rev'd on other grounds,* 316 Md. 551, 560 A.2d 1120 (1989), *cert. granted,* —— U.S. ——, 110 S.Ct. 834, 107 L.Ed.2d 830 (1990); *Runge v. State,* 78 Md.App. 23, 40–41, 552 A.2d 560 (1989), *rev'd on other grounds,* 317 Md. 613, 566 A.2d 88 (1989). It may also be by the showing of want of capacity

to observe or to remember. *Boone v. State,* 33 Md.App. 1, 6, 363 A.2d 550 (1976).

Whatever the form taken by the impeachment, what is required for the rehabilitative use of a prior consistent statement is that it logically rebut the impeachment. The analysis of 6 L. McLain, *Maryland Evidence,* § 613.2, at 169–170, well summarizes this requirement:

"Many of the cases simply find the prior consistent statement admissible as corroboration, without apparent consideration of whether its having been made logically rebuts the impeaching evidence. But, under the better rule, the prior consistent statement should be admissible only if the making of that statement would rebut logically the impeachment. Some Maryland cases have endorsed that position.

Under this approach, for example, if the impeacher's implication is that the witness has changed his or her 'story' before trial because of an improper motive, such as bias, the prior consistent statement will be relevant and therefore admissible to rebut that implication only if it was made prior to the time of probable fabrication, *i.e.,* prior to the time that the facts suggesting bias arose. If the impeacher's implication is that the witness' memory has failed by the time of trial and that the prior inconsistent statement, made closer to the time of the event in question, was more accurate, a prior consistent statement made before the inconsistent statement—or, perhaps, very soon after it—will be relevant and admissible to rebut that implication." (Footnotes omitted).

*See also Finke v. State,* 56 Md.App. 450, 494, 468 A.2d 353 (1983); *Coleman v. State,* 49 Md.App. 210, 228–231, 431 A.2d 696 (1981); *Borza v. State,* 25 Md.App. 391, 410, 335 A.2d 142 (1975).

■ The two different uses of the complaint have different legitimating chronologies. When offered in the State's case-in-chief to negate the inference of self-contradictory silence after an attack, the complaint, to be admissible, must be *a timely complaint,* one made immediately or

shortly after the sexual attack. That is not the critical chronology, however, when the complaint is offered for rehabilitative or rebuttal purposes. The capacity of the complaint logically to rebut the impeachment depends only upon the fact that it was made *before* the impeaching event (motive to fabricate, formulation of bias, loss of memory, etc.) occurred. It is measured not forward from the sexual attack but backward from the impeaching event. There is no necessary correlation between these distinct qualifying chronologies.

In the rehabilitative or rebuttal context, we observed in *Boone v. State*, 33 Md.App. 1, 6, 363 A.2d 550 (1976):

> "The general rule is that where the credibility of a witness has been impeached in such a way as to indicate that his present testimony may be a fabrication, prior consistent statements are admissible for rehabilitative purposes *if they would tend to show that such consistency was present prior to the time of probable fabrication.*" (Emphasis supplied).

It was of this same time qualification that Judge Bloom spoke in *Finke v. State*, 56 Md.App. 450, 492, 468 A.2d 353 (1983):

> "Thus, for an out-of-court statement to be admissible as a prior consistent statement, two elements must exist: 1) the witness whose prior statement is being offered must have been impeached so as to indicate that his present testimony is a fabrication and 2) that *the prior statement was made before the time of probable fabrication.*" (Emphasis supplied).

*See also Newman v. State*, 65 Md.App. 85, 98 n. 4, 499 A.2d 492 (1985).

In the context of a variety of impeaching devices other than a prior inconsistent statement, *McCormick on Evidence* § 49 (E. Cleary 3d ed. 1984), at 118, explained that the logical relevance of a prior consistent statement for rehabilitative purposes depends upon the timing of that statement in relation to the impeaching event:

"[I]f the attacker has charged bias, interest, corrupt influence, contrivance to falsify, or want of capacity to observe or remember, the applicable principle is that the prior consistent statement has no relevancy to refute the charge *unless the consistent statement was made before the source of the bias, interest, influence or incapacity originated.*" (Footnote omitted). (Emphasis supplied).

In the similar context of the impeaching device's being a prior inconsistent statement, *McCormick, supra,* § 49, at 119, made it equally clear that the logical rebutting power of the prior consistent statement also depends upon its having preceded the impeaching event:

"Again, if in the particular situation, the attack by inconsistent statement is accompanied by, or interpretable as, a charge of a plan or contrivance to give false testimony, then proof of a prior consistent statement *before* the plan or contrivance was formed, tends strongly to disprove that the testimony was the result of contrivance. Here all courts agree." (Footnote omitted) (Emphasis in original).

 It was of this last requirement that the State's rebuttal testimony in this case ran afoul. Amy's version of the attack upon her, testified to in rebuttal by both Trooper Dorn and Peggy Rock, was, indeed, consistent with her trial testimony. As rebuttal, however, it had no logical relevance. The impeaching witness for the defense had been Charles Bosley, the social worker. The impeachment consisted of 1) the fact that Amy is mentally retarded, 2) that Amy has a tendency to exaggerate in order to attract attention, and 3) that one recent complaint of Amy's about a sexual attack had probably been the product of a dream.

The problem with the attempted rehabilitation was that these conditions and tendencies preceded Amy's complaints of November 1 through November 3 as surely as they preceded Amy's trial testimony. The developing of these conditions and tendencies was not an intervening event between Amy's complaints and Amy's trial testimony. The consistency of Amy's reports and Amy's testimony under

this sequencing did not rehabilitate her testimonial credibility. It only gave rise to the likelihood that her prior complaints may have been just as much the product of her retardation, her tendency to exaggerate to attract attention, and her dreams as was her trial testimony. For rehabilitative purposes, the prior consistent statements lacked logical relevance. Under the circumstances, it was error to admit them. As we have already discussed, the error was not harmless.

### Substantive Evidence As a Hearsay Exception

Although it is not involved in the present case, we should, for the sake of completeness, mention a third form that a victim's complaint about a sexual attack sometimes may take in the law of evidence. It is that undergirded by what 4 *Wigmore on Evidence* (Chadbourn rev. 1972), § 1134, at 298, refers to as his third principle for receiving the evidence: "as a *res gestae* declaration, excepted under the hearsay rule." At 6 *Wigmore on Evidence* (Chadbourn rev. 1976), § 1760, at 240, Dean Wigmore points out how complaints of sexual attack sometimes qualify as genuine hearsay assertions:

"However, some courts have believed that such utterances, including their details of statement, could be received on the footing of genuine hearsay assertions, apparently under the present exception [spontaneous exclamations]. The practical difference would be that *the limitations necessary in using such evidence merely in testimonial corroboration would not apply,* and the evidence could be more freely received." (Footnote omitted) (Emphasis supplied).

*McCormick on Evidence* § 297 (E. Cleary 3d. ed. 1984), at 859, refers to the same use of the complaint as an out-of-court assertion received as substantive evidence under a firmly rooted hearsay exception. What *Wigmore* refers to as the "spontaneous exclamation" exception is what *McCormick* refers to as the "excited utterance" subcategory of his "spontaneous statement" category. *McCor-*

*mick* explains how under the Federal Rules of Evidence, this use of the complaint has come to dominate the field:

"Complaints by victims of rape and other sex offenses are treated as excited utterances by the Federal and Revised Uniform Rules (1974), there being no provisions in the rules directed specifically to sex cases. It seems unlikely that a separate approach to rape would have developed historically if the doctrine admitting excited utterances as a hearsay exception had evolved at an earlier time. Considerably broader admissibility results under the excited utterance exception: any traditional limitation to merely the fact that complaint was made gives way to the admission of all related details and the identity of the offender; coverage expands to all sex offenses, rather than being confined to rape only; the victim-declarant need not testify. Any charge of recent fabrication may be met as in other cases, including use of prior consistent statements to rebut. While arguably some diminution of the permissible time lapse may be entailed, all legitimate needs appear to be satisfied by the excited utterance exception." (Footnotes omitted).

In this third of its manifestations, the complaint about a sexual attack is hearsay, frequently admissible under one or another of the hearsay exceptions. In its first two manifestations, on the other hand, the complaint was nonhearsay.[7] Other differences in treatment abound. In its capacity

---

**7.** Although it must be noted that in its anticipatory and forestalling capacity, the complaint, traditionally nonhearsay, seems slowly to have been evolving into something that at least trenches on the borderland between nonhearsay and hearsay. The timeliness of the complaint and the circumstances under which it is made tend to establish the trustworthiness of its content. This is classically a consideration when dealing with hearsay. The admissibility, moreover, of such contextual attributes as the nature of the crime complained of, the time and place of the attack, and the identity of the assailant, are matters that seem to implicate the truth of the thing asserted. It may be, to be sure, that there is a technical though subtle distinction between supporting the happening of an event *per se* and supporting the testimonial credibility of a witness to that event. Wisely, jury instructions have never ventured into such treacherously and inevitably confusing and counter-productive considerations.

either to support or to rehabilitate a witness, the use of the complaint depends upon the testimony of a live witness. In its third capacity, as substantive evidence under a hearsay exception, the out-of-court assertion (the complaint) is frequently offered in lieu of, rather than in addition to, the live testimony.

At least in the case of the excited utterance exception, moreover, the time qualification is unique unto itself. The timeliness of a complaint in order to negative the inference of self-contradictory silence is, in all likelihood, not nearly so tightly limited as that for the continuation of the excitement necessary to qualify an excited utterance. Two careful explications of this difference are found in *People v. Damen*, 28 Ill.2d 464, 193 N.E.2d 25 (1963), and *State v. Stevens*, 289 N.W.2d 592 (Iowa 1980).

In the last analysis, this third employment of a victim's complaint about a sexual attack is no more than coincidentally concerned with the fact that it is a victim's complaint about a sexual attack. Its significance derives from its general qualification as an excited utterance (or other) exception to the hearsay rule. There is no special significance in the fact that the excited utterer was the victim of a sexual attack. He or she might just as easily have been an excited witness to a sexual attack on someone else. Nor does it make any difference that the incident complained about was even a sexual attack. The complaint might just as easily have been about a burglary, a robbery, or an automobile accident. If sufficiently excited, moreover, the utterance need not even have been a complaint. It could just as easily have been excited approbation. The rules and principles governing admissibility in this instance are the general rules and principles dealing with the appropriate hearsay exception. The fact that the substance of the utterance is a complaint about a sexual attack has no special significance.

In Maryland, to be sure, there is one limited instance where the use of an out-of-court declaration as

substantive evidence does depend upon the fact that the out-of-court declarant was the victim of an attack. In 1988, Md.Cts. & Jud.Proc.Code Ann. § 9–103.1, created a "tender years" exception to the hearsay rule for child victims under the age of twelve years. There is no requirement, however, that the attack have been sexual in nature. Other forms of child abuse will suffice as well. The out-of-court statement may qualify under some circumstances when the child is available as a witness as well as under other circumstances where the child is unavailable as a witness. The out-of-court statement, to be admissible under this statutory hearsay exception, is limited to those made to 1) a licensed physician, 2) a licensed psychologist, 3) a licensed social worker, or 4) a teacher. Other auditors will not do. There is with respect to this hearsay exception, furthermore, no timeliness requirement as to when the statement about the crime needs to have been made.

## *Conclusion*

The case law on this subject (more properly, on these three separate subjects) is frequently confusing because it tends to wander randomly back and forth among three distinct and not necessarily related evidentiary phenomena. It treats as a single subject with three variations what are really three totally different subjects. Obsessed with a surface similarity that is only coincidental, it does not sufficiently stress the more fundamental and more important dissimilarities. Blurring boundary lines, it does not adequately signal when it is passing from the consideration of one topic to the consideration of a very different topic. An opinion sometimes does not signal that it is crossing a boundary line because it is not always itself clear that it is crossing a boundary line.

In the first instance, the anticipatory and forestalling use of a victim's complaint about a sexual attack is, indeed, vitally concerned with the fact that the complaint is about a sexual attack.

In the second instance, the only concern is that the statement in issue qualify as a prior consistent statement. A complaint about a sexual attack may be a prior consistent statement but so may a statement about anything else. The focus should be upon what matters and not upon what does not.

In the third instance, the only concern is that the statement satisfy the requirements for an appropriate hearsay exception. A complaint about a sexual attack may be, for instance, an excited utterance but so may any other statement. The focus again should be upon what matters and not upon what does not.

The answer we get is frequently a function of the question we ask. We should not, therefore, even ask about complaints of a sexual attack when we should be asking, instead, about prior consistent statements or excited utterances. The stress should be upon the criteria that matter.

\* \* \*

In view of our disposition of the case, the appellant's third contention is moot.

JUDGMENT REVERSED; COSTS TO BE PAID BY CARROLL COUNTY.