768 A.2d 738

**Drexel Devoe NELSON**

v.

**STATE of Maryland.**

**No. 1069, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 9, 2001.

404

Jennifer P. Lyman, Assigned Public Defender of Washington, D.C. (Stephen E. Harris, Public Defender of Baltimore, on the brief), for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued before MURPHY, C.J., and CHARLES E. MOYLAN, Jr.(Retired, specially assigned), and DANIEL M. LONG, (specially assigned), JJ.

MOYLAN, Judge.

In evidentiary terms, how does one classify a victim's reporting or recounting of a sexual attack when that report is offered at trial through the testimony of the person who heard it? Perplexingly, it may be many things, each with its own qualifying rules and each with its own evidentiary significance.

It may sometimes be a prior consistent statement, admissible only in rebuttal and only after the victim has testified, offered to rehabilitate the victim's impeached testimonial credibility. In that capacity, it is non-hearsay. *Cole v. State*, 83 Md.App. 279, 296–302, 574 A.2d 326, *cert. denied*, 321 Md. 68, 580 A.2d 1077 (1990). It may sometimes, on the other hand, be an "excited utterance," an exception to the Rule Against Hearsay, admissible as substantive evidence whether the victim testifies or not. In that capacity, it is hearsay, an out-of-court assertion received in court for the truth of the thing asserted. 83 Md.App. at 302–05, 574 A.2d 326; *Cassidy v. State*, 74 Md.App. 1, 16–23, 536 A.2d 666, *cert. denied*, 312 Md. 602, 541 A.2d 965 (1988). It may on some occasions be a "statement to a treating physician," another exception to the Rule Against Hearsay, also admissible as substantive evidence whether the victim testifies or not. In that capacity, it is also hearsay, albeit admissible hearsay. *Cassidy v. State*, 74 Md. App. at 23–50, 536 A.2d 666. It may also be, as were several reports made by the victim in this case, a "prompt complaint" of a sexual attack, admissible only if the victim testifies. In that capacity, it straddles an increasingly blurred line between hearsay and non-hearsay,[1] but it is admissible in either event.

---

1. In *Cole v. State*, 83 Md.App. at 303 n. 7, 574 A.2d 326, we observed in this regard:

 [I]n its anticipatory and forestalling capacity, the complaint, traditionally nonhearsay, seems slowly to have been evolving into some-

In this opinion, as we deal, in turn, with each of three out-of-court reports by the victim, we will make every effort not to wander across doctrinal boundary lines and to keep each examination of deceptively similar but legally dissimilar sub-issues analytically distinct.

## The Case Before Us

The appellant, Drexel Devoe Nelson, was convicted by a Prince George's County jury, presided over by Judge Michele D. Hotten, of 1) second-degree rape, 2) a second-degree sexual offense, and 3) child abuse. On this appeal he complains that three separate out-of-court declarations the victim made to three separate witnesses were erroneously admitted into evidence in ostensible violation of the Rule Against Hearsay.

## The Factual Background

The appellant and Marcia P. had had, as of March 28, 1999, an "on again-off again" sexual relationship for eight or nine years. He spent the night of Saturday–Sunday, March 27 28, at her apartment in Prince George's County. He was still in bed when she left the apartment at about 8:00 A.M. to fill in for an usher at her church. Ms. P. also had her two daughters living in the apartment with her: Aisha, who was then thirteen years old, and Amaris, who was eleven.

Aisha, the sexual assault victim in the case, testified that at approximately 9:45 A.M. that Sunday morning, the appellant came into her bedroom, awakened her, and led her into her

---

thing that at least trenches on the borderland between nonhearsay and hearsay. The timeliness of the complaint and the circumstances under which it is made tend to establish the trustworthiness of its content. This is classically a consideration when dealing with hearsay. The admissibility, moreover, of such contextual attributes as the nature of the crime complained of, the time and place of the attack, and the identity of the assailant, are matters that seem to implicate the truth of the thing asserted. It may be, to be sure, that there is a technical though subtle distinction between supporting the happening of an event *per se* and supporting the testimonial credibility of a witness to that event. Wisely, jury instructions have never ventured into such treacherously and inevitably confusing and counter-productive considerations.

mother's bedroom. He lay down on the bed and rubbed her back as she, clad in a knee-length night shirt, sat on the bed. He asked her to lie down beside him and she acquiesced. He first hugged her and put his hand under her shirt. He then "went under the cover," removed her underpants, and "began to lick my vagina." As she "just laid there ... he came up and stuck his penis in my vagina." She complained that he was hurting her and told him to "take it out." After hesitating for approximately one minute, he ultimately did so. It was as the appellant was "getting off of me" that eleven-year-old Amaris walked into the room. She said, "Excuse me," and left.

The appellant testified and denied engaging in either cunnilingus or sexual intercourse with Aisha. He acknowledged, however, that she had climbed into bed with him because she was not feeling well. To comfort her he "gave her a hug and kissed her on the forehead, in a fatherly manner." It was at that point that Amaris came into the bedroom.

### Three Out-of-Court Statements

The tripartite "hearsay" issue (an admissibility issue, in any event) is before us because three State's witnesses testified that Aisha reported to them about having been raped. Aisha's first account (a complaint) was to her sister, Amaris. It was made immediately after the appellant left the apartment shortly after the rape. The second account (also a complaint) was made the next day at school when Aisha talked to her school counselor. The third account was made as a result of the school counselor's having notified Aisha's mother about the attack and the mother's taking of Aisha to the Sexual Assault Examiner at the Prince George's County Hospital.

### Out-of-Court Declaration No. 1: The Victim's Prompt Complaint Made to Her Little Sister

The appellant at least has preserved for appellate review his challenge to the little sister's recounting of the complaint made to her by Aisha shortly after the appellant left the apartment. Immediately after the rape, Aisha showered and

got dressed. As soon as the appellant left the apartment, Aisha called Amaris into the bedroom. Amaris told Aisha that "she smelled." Aisha showered again.

Although the thirteen-year-old victim and her eleven-year-old sister were extensively probed about the details of their conversation one full year after it occurred, they both firmly maintained that a conversation concerning the sexual attack took place between them shortly after the appellant left the apartment. Aisha testified that she had "a conversation" with Amaris. The direct examination immediately went on to other issues and she was never asked what it was that she had told Amaris. She acknowledged, however, that she told the police that she had informed Amaris of "what really happened."

On direct examination, Amaris, in her turn, was asked whether she had "ever talked" with Aisha and was asked what Aisha had told her. There was an immediate objection. The objection was overruled and Amaris answered that Aisha had told her that "she was raped." The very cursory examination of Amaris on that point then concluded and it was never made clear whether the word "rape" was a direct quotation from Aisha or was Amaris's summary of the event reported by Aisha. In either event, it was a prompt complaint about a sexual attack.

### The Admissibility of a Prompt Complaint As Substantive Evidence

██ It has been the settled law of Maryland for over one hundred years that "a victim's timely complaint of a sexual attack is admissible as part of the State's case-in-chief." *Cole v. State,* 83 Md.App. at 287, 574 A.2d 326. As Judge Eldridge stated for the Court of Appeals in *State v. Werner,* 302 Md. 550, 563, 489 A.2d 1119 (1985):

> "In prosecutions for sex offenses, evidence of the victim's complaint, coupled with the circumstances of the complaint, is admissible as part of the prosecution's case if the complaint was made in a recent period of time after the offense."

See also *Leek v. State,* 229 Md. 526, 527, 184 A.2d 808 (1962); *Shoemaker v. State,* 228 Md. 462, 466–67, 180 A.2d 682 (1962); *Saldiveri v. State,* 217 Md. 412, 416–18, 143 A.2d 70 (1958); *Murphy v. State,* 184 Md. 70, 76, 40 A.2d 239 (1944); *Green v. State,* 161 Md. 75, 79–82, 155 A. 164 (1931); *Blake v. State,* 157 Md. 75, 80–82, 145 A. 185 (1929); *Legore v. State,* 87 Md. 735, 736–38, 41 A. 60 (1898). See also *Corbett v. State,* 130 Md.App. 408, 420–21, 746 A.2d 954, *cert. denied,* 359 Md. 31, 753 A.2d 3 (2000); *Harmony v. State,* 88 Md.App. 306, 321, 594 A.2d 1182 (1991); *Guardino v. State,* 50 Md.App. 695, 705–06, 440 A.2d 1101 (1982); *Cantrell v. State,* 50 Md.App. 331, 336–38, 437 A.2d 696 (1981); *Estep v. State,* 14 Md.App. 53, 67–69, 286 A.2d 187 (1972); *Smith v. State,* 6 Md.App. 581, 586–87, 252 A.2d 277 (1969); *Price v. State,* 5 Md.App. 127, 131, 245 A.2d 600 (1968); *Hubbard v. State,* 2 Md.App. 364, 369–70, 234 A.2d 775 (1967); *Culver v. State,* 1 Md.App. 406, 413–14, 230 A.2d 361 (1967).

6 Lynn McLain, *Maryland Evidence* (1987), Sect. 613.2 at 170–71, observes:

"In a few special situations, prior consistent statements are admissible even when the witness has not been impeached. Prior identifications of the criminal defendant by the witness may be so proved, *as may timely complaints of rape.*" (Footnotes omitted) (Emphasis supplied.)

In this same regard, *McCormick on Evidence* (E. Cleary 3d ed.1984), Sect. 297, points out, at 859:

"In rape cases traditionally, and increasingly in cases of sex offenses generally, evidence has been held admissible that the victim made complaint. The only time requirement is that the complaint have been made without a delay which is unexplained or is inconsistent with the occurrence of the offense, in general a less demanding time aspect than with the typical excited utterance situation." (Footnotes omitted).

See also Joseph F. Murphy, Jr., *Maryland Evidence Handbook,* (1991 Cumulative Supplement), Sect. 801(D), at 87–88.

That principle of law is now embodied in Maryland Rule 5 802.1(d):

> The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:
>
> . . . .
>
> (d) A statement that is one of prompt complaint of sexually assaultive behavior to which the declarant was subjected if the statement is consistent with the declarant's testimony . . . .

The only arguable change that the rule made to pre-existing Maryland common law was in providing that this particular exemption from the Rule Against Hearsay would apply in civil, as well as criminal, cases. All of the prior case law had dealt only with criminal cases. See Lynn McLain, *Maryland Rules of Evidence* (1994), Sect. 2.802.1(2)(d), at 223.

In *Cole v. State,* 83 Md.App. at 289, 574 A.2d 326, this Court listed the necessary preconditions for admitting a prompt complaint of a sexual attack into evidence:

> [I]t is subject to limitations such as 1) the requirement that the victim actually testify; 2) the timeliness of the complaint; and 3) the extent to which the references may be restricted to the fact that the complaint was made, the circumstances under which it was made, and the identification of the culprit, rather than recounting the substance of the complaint in full detail.

The appellant argues that Aisha's earlier out-of-court declarations were used by the State "to reinforce Aisha's story" on the witness stand. We agree. That, of course, is precisely what the introduction of a prompt complaint of a sexual attack is intended to do. In what the appellant describes as a one-on-one credibility battle between the defendant and the victim, the legally sanctioned function of the prompt complaint of a sexual attack is to give added weight to the credibility of the victim. Apparently the evidentiary principle worked in this case exactly as it was intended to work.

By way of satisfying Rule 5–803(b)(4)'s applicability requirements, there is no disputing that Aisha, the out-of-court declarant, testified at the trial. There is no disputing that Aisha's Sunday morning conversation with her sister qualified as a "prompt" complaint of sexually assaultive behavior. There is also no disputing that the basic complaint made by Aisha to Amaris was not encumbered by unnecessary narrative detail.

The sole thrust of the appellant's argument is that Aisha's "prompt complaint of sexually assaultive behavior" made to her sister was not "consistent with [Aisha's trial] testimony." Maryland Rule 5–802.1(d) requires that the "statement . . . of prompt complaint" be "consistent with the declarant's testimony." The appellant confects an "inconsistency" out of almost ethereal ingredients. On her cross-examination, Aisha was asked about the first words of her conversation with Amaris when Aisha asked Amaris "what she saw" in the bedroom. The alleged "inconsistency" then emerged from the following fleeting exchange:

Q: And did you tell your sister what happened *at that point?*

A: No.

Q: You didn't?

A: No.

(Emphasis supplied).

The cross-examination went on immediately to other subjects. There was no explanation of to what extent the question was narrowed by the adverbial modifier "at that point." There was no explanation of what this thirteen-year-old witness took "at that point" to mean. She was never asked whether she had told her sister about the sexual attack "at any point" on that Sunday morning. Her statement to the police had been that she "told her [Amaris] what really happened." The appellant is trying to construct a disqualifying "inconsistency" out of hopelessly skimpy and unilluminating fragments.

## The Required Consistency Between Account A and Account B

It is unnecessary to anguish further over this insubstantiality, however, for the inconsistency condemned by the rule is qualitatively of a very different sort than the inconsistency now being conjured up by the appellant. We hold that the required consistency between the declarant's "statement ... of prompt complaint" and "the declarant's testimony" contemplates a substantive consistency between 1) the content itself of the out-of-court statement and 2) the content of the trial testimony. Are the two stories[2] themselves compatible? The concern is not with whether the victim can now, as a witness, accurately recall the details of precisely when and where and to whom her earlier declaration was made. It is

---

2. When we speak of the "story" told by the hearsay declarant or of the hearsay auditor's "version of that story," we are by no means intimating that full narrative detail of the criminal incident is permitted under this principle of admissibility. What is permitted is more than the bare fact of a complaint but less than a full and detailed narration. *Cole*, 83 Md.App. at 293–94, 574 A.2d 326, discussed this distinction:

> [W]hen the complaint is offered initially as a part of the State's case-in-chief, there are limitations upon the fullness with which the complaint may be narrated.... Although the earlier case law admitted only the bare fact that the complaint had been made, the restraints have been loosened at least to the point of admitting as well the essential nature of the crime complained of and the identity of the assailant.
>
> ....
>
> In terms of the admissible contents of the complaint, *Guardino v. State*, 50 Md.App. 695, 706, 440 A.2d 1101 (1982), has catalogued them:
>
> > "[I]t is established in Maryland that a complaint by a rape victim may be admitted as original evidence primarily to support the testimony of the victim as to the time, place, crime, and name of the wrongdoer."
>
> ....
>
> When a timely complaint of a sexual attack is offered, therefore, in the State's case-in-chief and for this anticipatory, forestalling purpose, it is clear that the more narrative details of the complaint are not admissible.

This distinction between the modest detail that puts the complaint in an identifying context and a much fuller narrative has no pertinence to the case now before us. The complaint here was skeletal, much more so than it need have been.

the hearsay auditor (Amaris) who must, on the witness stand, vouch for those circumstances. The required consistency is between 1) the story told by the victim on the witness stand and 2) the story heard and reported by the hearsay auditor.

It is the victim who testifies directly as to her version of the crime story. It is the hearsay auditor who testifies indirectly as to the victim's earlier version of that same story. Our focus is on whether what the victim says now is compatible with what the victim said then. Our required witness to what the victim said then is not the victim herself, but someone else who heard the victim say it. It is not required that the victim, as a witness, even recall having made the earlier out-of-court declaration, let alone recall the surrounding circumstances or the precise content of that earlier complaint. It is the hearsay auditor, not the declarant, who is the necessary witness to the actual uttering of the out-of-court declaration.

■■ The making of the prompt complaint is a fact that must be proved like any other fact. The jury must assess the credibility of the hearsay auditor (Amaris) and determine whether the complaint was ever, in fact, made. The judge, by contrast, must assume the actual uttering of the complaint and then decide, in order to rule on admissibility, whether the content of that complaint, assuming it to have been made, is consistent with the victim's trial testimony. In this case, Aisha testified that she had been raped by the appellant. Amaris testified that shortly after the appellant left the apartment, Aisha complained to her that she had been raped by the appellant. The content of the victim's out-of-court complaint and the content of the victim's trial testimony were completely consistent and Rule 5–802.1(d) was in that respect fully satisfied.

The doctrinal reasons undergirding the admissibility of prompt complaints of sexual attacks as substantive evidence fully support our holding as to the appropriate subject matter of the consistency requirement. In *Cole v. State*, 83 Md.App. at 288–93, 574 A.2d 326, this Court analyzed at length the rationale of the rule. It is the conventional wisdom that an

outraged victim of a sexual attack will raise the hue and cry as soon as it is feasible to do so. The failure of a victim to make a prompt complaint, therefore, may encourage a juror to look with skepticism at the victim's trial testimony. Unexplained earlier silence may be deemed inconsistent with that trial testimony. It is precisely to forestall such skepticism that the fact of a prompt complaint is admissible as substantive evidence. In *Cole*, 83 Md.App. at 289–90, 574 A.2d 326, we explained:

> [T]he timely complaint has evolved as a hybrid form of anticipatory rehabilitation, as something that does not wait to respond to impeachment but instead forestalls it.

> The unusual anticipatory or forestalling character of such evidence was discussed by 4 *Wigmore on Evidence* (Chadbourn rev.1972), § 1135, "Complaint or rape (continued): (A) First theory: Explanation of an inconsistency; fact of complaint is admissible," at 298–300:

>> "So, where nothing appears on the trial as to the making of such a complaint, the jury might naturally assume that none was made, and counsel for the accused might be entitled to argue upon that assumption. As a peculiarity, therefore, of this kind of evidence, it is only just that the prosecution should be allowed to forestall this natural assumption by showing that the woman was *not silent, i.e., that a complaint was in fact made.*

>> This apparently irregular process of negativing evidence not yet formally introduced by the opponent is regular enough in reality, because the impression upon the tribunal would otherwise be there as if the opponent had really offered evidence of the woman's silence. Thus the essence of the process consists in the showing that the woman did *not* in fact behave with a silence inconsistent with her present story. The courts have fully sanctioned this analysis of the situation." (Footnote omitted) (Emphasis in original).

After pointing out that "[w]hat the fact of a timely complaint forestalls or counteracts is frequently a defense based upon consent," 83 Md.App. at 290, 574 A.2d 326, we went on to point

out that the salutary forestalling effect is not limited to cases where consent is asserted as a defense but also serves to forestall challenges to the very occurrence of the sexual event itself.

4 *Wigmore, supra,* § 1135, at 298, not only concurs as to the provenance of the rule but points out that the relevance of either a timely complaint and the absence of a complaint is not limited to the situation where the defense is one of consent:

"Now, when a woman charges a man with a rape, and testifies to the details, and the accused denies the act itself, its very commission thus coming into issue, the circumstance that at the time of the alleged rape the woman said nothing about it to anybody constitutes in effect a self-contradiction of the above sort. It was entirely natural, after becoming the victim of an assault against her will that she should have spoken out. That she did not, that she went about as if nothing had happened, was in effect an assertion that nothing violent had been done.

Thus, the *failure of the woman* at the time of an alleged *rape,* to *make any complaint* could be offered in evidence (as all concede) as a virtual self-contradiction discrediting her present testimony." (Footnote omitted) (Emphasis in original).

*McCormick on Evidence, supra,* § 297, at 859, refers as well to this historic evolution:

"In its origin, the theory of admissibility was to repel any inference that because the victim did not complain no outrage had in fact transpired."

When a timely complaint of a sexual attack is introduced by the State as part of its case-in-chief, the theory for its admissibility is this anticipatory forestalling of any self-contradiction implicitly arising out of the victim's failure to complain.

83 Md.App. at 291–92, 574 A.2d 326.

We hold that Judge Hotten did not abuse her discretion in ruling that the out-of-court statement made by Aisha to

Amaris was admissible as a prompt complaint of a sexual attack.

### Even If Promptly Uttered, An Excited Utterance Must Also Be Excited

■ It is unnecessary to address the State's alternative argument that Aisha's statement to her sister would also have qualified as an excited utterance exception to the Rule Against Hearsay. By way of a mere passing glance, however, there does appear to be some force in the appellant's argument that the utterance, albeit promptly made soon after the attack, was not shown to have been made while Aisha was in the throes of any overriding excitement. Unlike a prompt complaint of a sexual attack, an excited utterance must be more than merely a prompt utterance.[3]

■ The State in its brief speculates, "The victim *undoubtedly* continued to be frightened, startled and under great strain as a result of Nelson's sexual attack at the time she spoke with Amaris." Undoubtedly, that may be true. Such a critical state of mind, however, must be the subject of proof and not of mere speculation. See *Cassidy v. State*, 74 Md. App. 1, 16–23, 536 A.2d 666 (1988). We will not undertake any in-depth analysis of this argument, however, because it is offered by the State only as what would be an ultimately superfluous fall-back position.

### Out–of–Court Declaration No. 2: The Victim's Prompt Complaint To Her School Counselor

The sexual attack occurred on Sunday morning. When Aisha went to school on Monday morning, the event of the day before "was sort of bothering me." She confided in a friend about the Sunday morning attack. That friend, in turn, alerted Jenny LaRue–Robinson, the school guidance counsel-

---

**3.** Beneath the P.T. Barnum hyperbole, there is much residual truth in the late Professor Irving Younger's classic description of an excited utterance as a statement that begins with "My God" and ends with an exclamation point.

or, that she "should see Aisha." Right after the lunch break, Ms. LaRue–Robinson called Aisha to her office. Aisha was willing to talk to her counselor but wanted her counselor "to keep it a secret." Ms. LaRue–Robinson testified that Aisha then confided in her:

> She told me that on the day before, which is the 28th, while her mother was in church, that her mother's boyfriend did something to her. In her words it was he did something. When I asked her to further explain, what she told me was that he kissed her on her genitals.

If the admissibility of that out-of-court declaration were properly before us, it seems overwhelmingly likely that we would hold it to have been admissible as a prompt complaint of a sexual attack, under precisely the same reasoning that we used to affirm the admission of Aisha's earlier complaint to her sister, Amaris. The only arguable difference might have been with respect to the promptness of the complaint.

■ The additional 24–28 hours would almost certainly, however, have no adverse effect on the admissibility of a prompt complaint of a sexual attack, whereas it might well be fatal to an excited utterance. The window of admissibility of the latter is circumscribed by the continuation of a state of excitement in the body and in the psyche of the victim. There is a glandular component. The window of admissibility of the former, by contrast, is measured by the expectation of what a reasonable victim, considering age and family involvement and other circumstances, would probably do by way of complaining once it became safe and feasible to do so. Reasonable time frames would vary with circumstances. An emotion-driven complaint to a close friend or relative, for instance, might well precede a more deliberate report to police or to medical attendants. In *Cole v. State*, 83 Md.App. at 304, 574 A.2d 326, we spoke of the promptness of a prompt report:

> *The timeliness of a complaint* in order to negative the inference of self-contradictory silence *is,* in all likelihood, *not nearly so tightly limited as that for the continuation of the excitement necessary to qualify an excited utterance.*

Two careful explications of this difference are found in *People v. Damen,* 28 Ill.2d 464, 193 N.E.2d 25 (1963), and *State v. Stevens,* 289 N.W.2d 592 (Iowa 1980).

(Emphasis supplied).

*McCormick on Evidence* (E. Cleary 3d ed.1984), Sect. 297, at 859, explains:

"The only time requirement is that the complaint have been made without a delay which is unexplained or is inconsistent with the occurrence of the offense, in general *a less demanding time aspect than with the typical excited utterance situation.*"

(Emphasis supplied).

As 4 *Wigmore on Evidence* (Chadbourn rev.1972), Sect. 1135, explained at 300, the purpose of the prompt complaint is to forestall the inference that the victim's failure to complain was inconsistent with the victim's trial testimony as to the attack:

"[T]he essence of the process consists in the showing that the woman did *not* in fact behave with a silence inconsistent with her present story."

In that same regard, *Cole v. State,* 83 Md.App. at 292, 574 A.2d 326, observed:

When a timely complaint of a sexual attack is introduced by the State as part of its case-in-chief, the theory for its admissibility is this anticipatory forestalling of any self-contradiction implicitly arising out of the victim's failure to complain.

■ The merits of the admission of this out-of-court complaint are, however, not before us. The appellant never objected, even tentatively, to what Aisha told the counselor but only to what the counselor said to Aisha. Even that objection was immediately and expressly withdrawn. The entire exchange was as follows:

MS. LARUE–ROBINSON: At that time I reiterated to her that if what she told me—

[DEFENSE COUNSEL]: I object. I object.

THE COURT: Basis?

[DEFENSE COUNSEL]: Hearsay.

THE COURT: What she told Aisha is hearsay?

[DEFENSE COUNSEL]: No. No. I am not objecting to that part of it.

THE COURT: Okay. You can't say what Aisha said.

Why don't you rephrase your question?

BY [PROSECUTOR]:

Q: What did you say to Aisha at that point?

A: What I said to Aisha was—

[DEFENSE COUNSEL]: Your Honor, *I am going to withdraw my objection.* I am sorry. *For completeness I will withdraw my objection.*

THE COURT: Please continue.

(Emphasis supplied).

The appellant does not suggest what error—or whose error—is before us for ostensible review. The appellant does not even invoke the promiscuously abused and overused fallback claim of "plain error."[4] There is obviously nothing before us on this non-issue.

### Out–of–Court Declaration No. 3: The Victim's Report To A Sexual Assault Examiner

At the suggestion of the school guidance counselor, Aisha's mother took Aisha, at approximately 7:30 p.m. on that Monday evening, to the Sexual Assault Center at the Prince George's County Hospital. Aisha there met with Sexual Assault Examiner Kathy Murphy, a Registered Nurse with specialized training in sexual assault examination. Before making a

---

4. The notion that the judge should, *sua sponte,* have rejected testimony to which the appellant did not object is preposterous. The judge might thereby have stripped the appellant of a potentially devastating impeachment device. The victim testified that she had been raped. The complaint to the counselor made no mention of rape. It might well have been the trial strategy to attempt to exploit that inconsistency, an inconsistency even more damaging if brought out by the State than by the appellant.

physical examination of Aisha, Ms. Murphy took from her a brief oral history of events leading up to and including the sexual attack.

In terms of ultimate significance when recounted in court by Ms. Murphy, that oral history consisted of two very different components. There was first the non-inculpatory or essentially innocuous prelude to the attack, innocuous in our judgment because it did not differ in any meaningful way (we stress the qualifier "meaningful") from the exculpatory testimony of the appellant himself, in which he acknowledged having been in bed with Aisha and having kissed her and hugged her "in a fatherly way."

Q: What did she say to you during your interview?

A: [Aisha] disclosed to me that at about 9:00 in the morning she was sleeping in her bed. A gentleman, which she described as her mom's boyfriend, came in to the room and woke her up.

He had advised her he wished to speak to her, and he wished to talk to her about something.

[Aisha] followed the gentleman into her mom's bedroom. To which she said—to which she had advised, disclosed to me, that the gentleman began to rub her back.

At that time they started talking.

Because of its essential insignificance, it is worthy of no further mention, even by way of noting the non-preservation of any objection to it. If in its detail it arguably went slightly beyond the more skeletal ideal of a model "prompt complaint of sexual attack," it demonstrably still did not make any difference.

The in-court testimony about the out-of-court statement then took on significance:

And she advised me that she was forced to lie on the bed, and that she was sexually assaulted by the gentleman.

Q: Did she say how she was sexually assaulted?

A: Yes. She said that she was forced to allow him to have vaginal intercourse . . . with her.

That assertion self-evidently helped to establish the *corpus delicti* of rape.

Although it seems clear that this out-of-court declaration, just as those to Amaris and to the school counselor, could have qualified as a prompt complaint of a sexual attack (a prompt "report" is the same as a prompt "complaint" within the contemplation of this evidentiary principle), the appellant and the State have chosen to pitch the battle on a different field. They cast the issue of admissibility in terms of the firmly rooted exception to the Rule Against Hearsay classically referred to as a statement to a treating physician.

Either as a prompt complaint or as a hearsay exception, the out-of-court utterance would come in as substantive evidence. The significance of the prompt complaint would consist largely of the fact that it was made. The significance of the hearsay exception, by contrast, would be that the out-of-court assertion would be received for the truth of whatever had been asserted. The admissibility of the prompt complaint would depend upon the declarant's taking of the stand. The admissibility of the hearsay exception would be burdened by no such precondition. The prompt complaint would be limited to enough surrounding detail to establish the context of the complaint. The hearsay exception would not be so austerely circumscribed.

With respect to the hearsay exception, Maryland Rule 5–803(b)(4) now provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical treatment or medical diagnosis in contemplation of treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external sources thereof insofar as reasonably pertinent to treatment or diagnosis in contemplation of treatment.

It is now universally recognized that the term "physician" is much too restrictive. Indeed, Rule 5–803(b)(4) does not use the term. In this regard, see *Choi v. State,* 134 Md.App. 311, 320–22, 759 A.2d 1156 (2000); *In Re Rachel T.,* 77 Md.App. 20, 36, 549 A.2d 27 (1988). There might, however, have been a legitimate issue in the case over whether the "medical history" given by Aisha was for purposes of "treatment" or was merely part of an evaluative examination for forensic purposes. See *Low v. State,* 119 Md.App. 413, 417–26, 705 A.2d 67 (1998); *Cassidy v. State,* 74 Md.App. 1, 23–50, 536 A.2d 666 (1988).

 As interesting as that issue might have been on its merits, it is not before us. When the State initially offered Aisha's statement to Ms. Murphy pursuant to Rule 5–803(b)(4), the court sustained the appellant's objection subject to the State's "laying a further foundation." After Ms. Murphy explained her usual investigative procedure and her purpose in seeking the background information, the following exchange took place:

[STATE'S ATTORNEY]: At this time I'd be seeking to ask the question that I asked before.

THE COURT: Ask the question, so that Mr. Irminger can preserve his objection.

[STATE'S ATTORNEY]: Sure.

BY [STATE'S ATTORNEY]:

Q: Ms. Murphy, what did Aisha say to you during your interview?

[DEFENSE COUNSEL]: *I am not going to object,* Your Honor, actually.

THE COURT: Okay.[5]

(Emphasis supplied).

As Judge Bloom pointed out in *Hall v. State,* 119 Md.App. 377, 705 A.2d 50 (1998), "It is a well recognized principle that,

---

**5.** The decision not to object may well have been a calculated trial tactic. A defense frequently wants to convey to the jury the impression that it has absolutely nothing to hide and has no intention of resorting to legal technicalities.

as a general rule, the admissibility of evidence admitted without objection cannot be reviewed on appeal."[6] Maryland Rule 5–103. We have no inclination to depart from that fundamentally salutary rule.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

The defense may also have wished to retain the option of exploiting an arguable inconsistency between two of Aisha's out-of-court declarations. She told Ms. Murphy that she had been subjected to sexual intercourse but made no mention of cunnilingus. She had told Ms. LaRue–Robinson, by contrast, about cunnilingus but not about sexual intercourse.

It is not for trial judges, *sua sponte*, to second-guess trial tactics, however ill-advised they might seem to the judge. *Madison v. State*, 200 Md. 1, 8–9, 87 A.2d 593 (1952) ("We are ... without authority to review errors in trial tactics of defense counsel or to speculate as to possibilities that different tactics might have produced a different result."). Even the notion of "plain error" requires, as a rock-bottom minimum, a legal error by the judge, not a tactical miscalculation by defense counsel; the judge does not sit as co-counsel for the defense. Neither does the appellate court.

6. Appellate review, of course, is concerned with actual trials that take place in the real world, to wit, with rulings that trial judges make in the indicative mood. The appellant would take us "Through the Looking Glass" into a world where events are in the subjunctive mood. In his reply brief he argues, "**IF** defense counsel **HAD MAINTAINED** his original objection, **HE WOULD HAVE BEEN** overruled."

Would the appellant, then, be satisfied by a holding in the subjunctive mood: "And **IF THAT HAD HAPPENED, WE WOULD HAVE RE-VERSED** the convictions"? On this side of the looking glass, however, that did not happen and we will not reverse the convictions. We do not make holdings that might have been in response to rulings that might have been.